## Case No. 5,245a.

### GARNETT v. MAYO et al.[1]

[4 Hughes, 377.]

District Court, E. D. Virginia. April 30, 1878.

LIABILITY OF SURETY—SIGNATURE TO BOND—MISREPRESENTATIONS—EVIDENCE.

[A surety on a bond resisted its enforcement on the ground that he only signed it on the representation that one W. would join as surety. It appeared that defendant had previously refused to sign without W.'s signature, but that he afterwards did sign when the bond was in a complete state, without W.'s name in any part of it, and without any additional scroll of seal for another signature, or room on the paper for such. The obligee was not present at the time, and no attempt was made to deceive defendant into the belief that W.'s name was on the bond. Held, that on these facts a verdict for defendant should be set aside and a new trial granted.]

[This was an action at law by Garnett, as assignee in bankruptcy of D. C. Mayo, against said Mayo, as principal, and W. K. Watts and Lawrence Lottier, as sureties, upon a bond given under the circumstances stated below. The case was heard on motion of plaintiff to set aside a verdict for defendants.]

A valuable part of the assets of Mayo, the bankrupt, consisted of the expensive machinery and implements constituting the outfit of a very large factory for the extensive manufacture of tobacco in the city of Richmond. Its value could only be approximately realized by selling it as an entirety in the factory building in which it was, at the time of the bankruptcy of Mayo. The bankrupt, by the aid of capitalists, proposed to go on with his business as a large tobacco manufacturer, after his bankruptcy; and proposed to do so in the same building in which he had operated before; and hence it was obvious that he could afford to give more for his former outfit and fixtures than could be obtained for them by sale. At all events, so it was, that the court, on due consideration, ordered, in the bankruptcy proceedings, among other things, as follows, viz.: That when D. C. Mayo has paid into the Planters' National Bank to the credit of this cause, subject to the order of this court, the sum of $1,000, in cash, and deposited in the same place, to the same credit, his note for the sum of $1,700, payable, etc., and endorsed, etc., and when he and two responsible sureties satisfactory to the assignee have made, executed and delivered to said assignee their bond in the penalty of $12,000, to have all the personalty enumerated (the said outfit and fixtures) in a schedule filed with his petition, forthcoming, whenever the court shall require him to pay the balance due by him for said personalty and conditioned to pay said purchase money in obedience to any order of court requiring him so to do, or else to surrender the personal

property aforesaid for sale by the assignee, and in the event it sells for less than the said balance due, to make good the deficiency; and conditioned also to keep said property insured, to pay all taxes due and to accrue, and not to remove it from its present location, and also to pay interests on said balance of $12,000, then the court will accept him as the purchaser of said personalty, and look to him and his sureties as responsible for the same. Mayo complied with these terms, paid the cash, gave the note, which was duly met at maturity, and gave the bond for $12,000 for the balance of the purchase money, W. K. Watts and Lawrence Lottier being his sureties. After the lapse of time the court did fix the amount due by Mayo for the purchase at $12,550, which he was ordered to pay. On his failure to do so, the court ordered a sale of the tobacco fixtures and outfit, which sale produced the sum of $6,347, and left a balance due of $6,359, for which Mayo and his sureties were held liable. In due course, this balance not being paid by Mayo, this action was instituted for it by the assignee against Mayo and his two sureties, Watts and Lottier. It seems that the bond on which the suit was brought was not the first sketch of one that was presented for signature to W. K. Watts. When the form of bond first drawn was presented to Watts by the assignee, he refused to sign it with Lottier alone, but said he would sign it if one Joseph P. Winston went upon it. Afterwards, and upon some explanations, the bond now sued upon, drawn wholly in manuscript and containing in the opening clause only the names of Mayo, Watts and Lottier, and having only three scrolls of seals at the end and without room at the end for more than three names, was presented to him. Watts signed it without Winston's name being upon it. The defense of Watts was, that he was informed at the time the bond was presented to him that it was not a bond for money, but merely for the forthcoming and safe keeping of property; and that he had signed on the condition that Winston also was to be on the bond. There were one or two mistrials of the case, by the juries failing to agree upon a verdict. There was finally a trial at which the jury found for the defendants. Plaintiff now moves the court to set the verdict aside, and grant a new trial.

HUGHES, District Judge. The motion is to set aside the verdict as contrary to the law and evidence, and as defective in form; and for a new trial. It is unnecessary to consider the technical ground relied upon in part by the plaintiff. My action will rest upon a reason of substance, to wit, that the verdict was contrary to the law and the evidence of the case. It was proved that Watts, the defendant, had had previous conversations about the bond, and had declared more than once that he would not

[1] [Published from certified copy furnished by the clerk of the court.]

sign the bond with only Lottier upon it as co-surety, but would sign it if Winston would go upon it as a co-surety. This he said in his testimony, that he had told Mayo, the principal in the bond, and had also told Alderdice, the obligee. Nevertheless, after these positive declarations of intention, the bond, which is the subject of this suit, was presented to him just as it now is, and he signed it. He signed it although he had recently told Alderdice that he would not sign without Winston's name upon it. He stated to the jury before the case was submitted to the jury, in words which I took down myself: "Alderdice was not present, as I recollect, when I signed the bond." Further on in his evidence he said again as I took him down: "I know that Mr. Lottier's signature was on the bond when I signed it. I don't recollect whether Alderdice was present when I signed the bond or not." If Alderdice, the obligee, was not present to misrepresent or deceive the defendant Watts when he signed the bond, it is difficult to conceive how in law Watts is not liable. There was no evidence that Alderdice, in his interview with Watts previously to Watts' execution of the bond, made any other representations than that the effect of the bond would be only to guarantee that the fixtures would not be removed from the factory. If, when the bond was brought to Watts for his signature, it had words to give it effect beyond that, and Watts signed it, Watts is bound, and it is not competent to prove previous conversations to vary its terms. No one but Mayo is shown by the evidence to have given Watts assurances that Winston would join him on the bond. If Watts after, as he says, "peremptorily and positively" declaring to Mayo that he would not go on the bond without Winston, afterwards nevertheless went on the bond, it is difficult to imagine that he had not changed his mind; and it is more difficult to perceive how Mayo's representations or promises to him or to Winston could in law release him from his obligation under hand and seal to the obligee of the bond. The evidence is clear and uncontradicted, that Watts signed the bond just as it is; in the day time; in his own store; while in the full possession of his faculties; after his mind had been fully drawn to the consideration whether he would sign without Winston or not; while free from all extraneous influence over his free will and action; when it was obvious that Winston's name was not on the bond, and when no attempt was made to deceive him into the belief that Winston's name was on it. That the jury had great doubt of the truth of the pretension that Watts had signed on an understanding with Mayo that he was to get Winston's name upon the bond, was shown by their asking to re-examine Watts after they had been for some time in retirement. This pretension is negatived also by the fact, that the bond in the shape in which it was when Watts signed it was not drawn up for Winston's signature. For these and other reasons I am so strongly inclined to the opinion that the verdict was contrary to both the law and the facts of the case, that I will set aside the verdict.

[For subsequent proceedings, see Cases Nos. 9,353 and 9,353a.]